UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
GEORGIANNA SAVAS,

          Plaintiff,

-against-

ZACHARIAS GEORGIOU PORTALAKIS,

          Defendant.
-----------------------------------------------------------------X

12 CIV 1248 (VM)

**DECLARATION OF ZACHARIAS G. PORTALAKIS PURSUANT TO 28 U.S.C. §1746**

ZACHARIAS G. PORTALAKIS, hereby declares under penalties of perjury under the laws of the United States that the following is true and correct and made upon his personal knowledge:

## INTRODUCTION

1. I am the Defendant in the above captioned action.

2. I reside in Athens, Greece and am a citizen of Greece.

3. I am a stock broker and operate a brokerage firm under the name Z. G. Portalakis, S.A., which has it offices in Athens.

4. My primary source of income is derived from my stock brokerage business. I have been a member of the Athens Stock Exchange since 1981. I have been the President of the Association of Greek Brokers from July 1989 through February 1991.

5. On January 2011, I was elected as a member of the Ethics Committee of the Association of Greek Brokers for a three years term.

6. I am a well known art collector in Greece and, to my knowledge, the largest collector of the works of Theodoros Stamatelos (known as "Stamos") in the world.

7. I was elected as a member of the Board of the National Gallery of Greece for the period of January 1992 through March 2004. Due to my donations to the National Gallery of Greece, in 2000 I was awarded the title of Great Benefactor of the Gallery. My name and my company's name along with the other Benefactors' and Supporters' names, appear at the entrance of the gallery.

8. I am currently a member of the Board of the Museum of the City of Athens

9. Neither I or anyone acting on my behalf has ever transacted business in New York which would subject me to jurisdiction in New York nor have I or anyone acting on my behalf ever contracted to supply goods or services in New York.

10. Neither I nor anyone acting on my behalf regularly solicits business in New York nor do I derive substantial revenue from goods or services used or provided in New York. I do not derive substantial revenue from interstate or international commerce.

11. I submit this Declaration in support of my motion to, *inter alia*, dismiss the Complaint for lack of personal jurisdiction over me; or, alternatively, based upon a prior pending action between myself and the Plaintiff, Georgianna Savas, presently being litigated in Greece; or because New York is an inconvenient forum for the prosecution of this action.

12. With respect to the allegations in the Complaint, I was never physically present in the City or State of New York nor did I employ anyone in New York to work for me nor did I appoint or ask anyone to act as my "agent."

13. To the extent that I signed any documents to which reference is made in the Complaint, such documents were brought to Greece by the Plaintiff where they were signed by me. Similarly, any communications between the Plaintiff and me occurred either face to face in Greece or while I was in Greece and the Plaintiff in another location.

14. Furthermore, as set forth in the accompanying Declaration of Cristos Gianakos, and more fully set forth below, Mr. Gianakos was not my agent nor did I hire Soho Crates to ship Stamos' artwork to Greece.

15. Any statement, suggestion or inference to the contrary in the Complaint is false.

16. In order for the Court to properly decide my motion, I believe it is necessary to provide a full and complete picture of my relationship with Stamos, the Plaintiff, who is his sister, and with litigation which is currently ongoing in Greece (which preceded the initiation of this lawsuit) which addresses the issues raised in the Complaint.

## BACKGROUND

17. I first met Stamos in the Fall of 1987. We were introduced by the Greek artist Christos Sarakatsianos.

18. We became fast friends and spoke at least one or more times per week, often daily. Stamos spent his summers in Greece and when he was here I spent significant time with him at his home on the island of Lefkada or in Athens..

19. During our time together I became his devoted student, friend and trusted advisor.

20. In 1989 Stamos' health began to deteriorate. As a result I retained the services of medical personnel in Athens to treat his various ailments and paid the cost as he was unable to pay for this care himself.

21. In response to the bond that had formed between us, in 1995 Stamos presented me with a handwritten document which authorized me to "protect the copyright of all pieces " of his work, "to verify the authenticity" of such work and "to reproduce any of [his] works" or part of it in any place of the world.

22. In 1996 Stamos was hospitalized in critical condition. Because of this I personally contacted his sister, the Plaintiff, to advise her of his condition. Because I had never previously met or spoken to her, I put Stamos on the phone and they made arrangements for her to come to Athens and visit him.

23. During the time the Defendant visited Stamos in Athens, she had him execute a Will which was prepared by their cousin, an attorney named Leonidas Papasavvas. In fact, Stamos was taken via taxi from the hospital in which he was a patient to the American Embassy where he executed the Will, after which he returned to the hospital.

24. As I subsequently learned, the Will bequeathed all of Stamos' works and copyrights worldwide to Plaintiff. Both her and her attorney Arthur Mannarino confirmed this subsequently in the May 13, 2009 assignment contract.

25. Stamos died in Greece on February 2, 1997. It was at Stamos' funeral on Lefkada that I met the Plaintiff for the second time. However, for reasons unknown to me she avoided speaking to me at length.

26. After Stamos' death I organized shows of his work at the National Gallery of Greece (1997) and Basilica of San Marco in the City of Heraklion (1998).

27. I subsequently learned that the Plaintiff visited the exhibition in Heraklion.

28. In 1999 the Plaintiff contacted me, apologized for her conduct towards me and asked me to assist her in promoting the works of her late brother.

29. In 2002 I sponsored another show of Stamos' work at the request of the Plaintiff, who appeared at the show in Greece.

30. In 2003 Plaintiff expressed an interest in writing a book about Stamos' life. She wanted the book published in Greece because the cost of publishing such a book in the United States was beyond her means.

31. The book, entitled "Eyes on Stamos - A Sister's Memoirs - A Brother's Wishes - Georgianna" was published in Greece in 2005. I bore the entire cost of the book's printing and publication.

32. Following this, Plaintiff on her own, sent me various works of her brother and many of his personal belongings (drafts, paintings, early works, brushes, etc) that were crated in big boxes. This had also happened on various other occasions e.g. on my birthday or a show, when Plaintiff was sending me items from her own personal collection as surprise gifts to me, without a prior notice, and without me knowing what she was sending me.

33. At no time did I ever come to New York to examine or inventory these works. I did not even know what she was sending me until I opened the crates or packages.

34. Rather, Plaintiff enlisted the help of Cristos Gianakos, another Greek artist, who was a friend of Stamos, Plaintiff and her late husband, to assist her in collecting and shipping the works.

35. I did not ask Mr. Gianakos to assist with the shipment of the artwork or personal effects nor was he ever employed by me or designated as my agent.

36. The statement in the Complaint that he was my agent or that I represented to Plaintiff that he was my agent is unequivocally false.

37. Similarly, it is my understanding that it was Mr. Gianakos who suggested that Plaintiff use Soho Crates of New York to ship the artwork and personal effects to me in Greece. I did not hire Soho Crates nor did they ever act as my agent in New York for the shipment of Stamos' works and effects to Greece.

38. In 2006 Plaintiff and her husband came to Greece and brought with them a document prepared by their attorney in New York which granted me "a co-exclusive right license and privilege" to, *inter alia*, "copy, sell and distribute" copies of the works of Stamos worldwide. I signed this document in her presence in Greece, and my signature was witnessed by the Plaintiff's husband.

39. In December 2008 I learned of an art auction to be held in Athens by an art dealer named Petros Vergos. The auction was to include two (2) works attributed to Stamos.

40. After viewing the works attributed to Stamos I concluded that they were not his works and therefore infringed upon my rights pursuant to 1995 letter by Stamos and the 2006 License granted me by Plaintiff. As a result, pursuant to the powers given to me by those documents, I asked Mr. Vergos to remove them from the auction.

41. When he refused to do so, I brought an application before the "Single Member First Instance Court of Athens" seeking an order to enjoin the sale of the paintings and sequester them

        subject to a final determination of the Court as to their genuineness. ("Action No. 1"). Plaintiff had been apprised of this action.

42. The Court granted my application and Vergos surrendered the paintings to the Director of the National Gallery of Art who acted as the escrow agent.

43. Subsequently, in July 2009 I filed suit in the "Athens Multi-Member Court" seeking an order for the destruction of the paintings, a permanent injunction prohibiting Vergos from selling non authenticated works of Stamos, and monetary damages. For copyright violations("Action No. 1-A").

44. This matter was finally tried by the Court in January 2012 and we are awaiting a decision.

45. The Plaintiff was fully aware of my actions and concurred with them. In fact, she provided me and local Greek counsel with various notary proxies to act on her behalf.

46. In January 2009, while the foregoing action was proceeding, I sponsored yet another showing of Stamos' works in Greece ("STAMOS REDS") which was attended by Plaintiff.

47. During this visit she executed a Special Power of Attorney which authorized me to establish a Foundation under Greek law for the promotion of her brother's artworks and take whatever steps were necessary to see the task completed.

48. In May 2009 Plaintiff sent me an agreement ("Assignment of Copyrights Agreement") in Greece assigning to me the worldwide copyrights to her brother's works subject to my transferring them to the Foundation to be created to promote Stamos' work.

49. In September 2009 Articles of Association for the Foundation were completed and on October 1, 2009 I filed an application for the creation of the Foundation with the Ministry of Finance -National Trusts Directorate.

50. This application continues to move forward. However, representatives of the Plaintiff recently appeared before the National Trust Directorate and submitted an opposing Memo. As a result, the case has been adjourned and is presently pending for further consideration of the validity of Plaintiff's copyright objections.

51. On November 9, 2011 Petros Vergos the art dealer/auctioneer who was the subject of my 2008 application for an injunction and the 2009 lawsuit, three years after the commencement of such lawsuit brought an Action (effectively a counterclaim) against me before the Athens Multi-Member Court of First Instance seeking damages for my actions in having held up the sale of the alleged Stamos paintings. ("Action No. 2")

52. Six days later, on November 15. 2011, three years after the commencement of my initial lawsuit, I was sued in the Athens Multi-Member Court of First Instance by New York art dealers Eric and Paul Efstathiou and their company PTE Fine Arts, Inc. which is a New York art dealer, for damages in the amount of 700,000 euros. ("Action No. 3").

53. The Efstathiou' and PTE Fine Arts, Inc claim that they owned the paintings which were being auctioned by Vergos and were damaged by my actions.

54. In both Action No. 2 and Action No. 3, the Plaintiff has submitted a sworn witness affidavit dated December 9, 2011 in support of Plaintiffs, alleging revocation of our above mentioned licensing and copyright agreements.

55. Thus, the issue of the legitimacy of those Agreements and their alleged revocation is to be determined by the Greek courts in those Actions.

56. Contrary to the allegations in paragraphs "47" and "56" of the Complaint, the only action I ever took with respect to the enforcement of rights I have under the Agreements was as set forth above; to enjoin a Greek art dealer from offering purported paintings by Stamos at an auction which was to take place in Athens and thus protect Stamos legal rights

57. Significantly, the "New York art dealers" to whom reference is made in those paragraphs of the Complaint have sued me in Greece, not New York. Presumably this is because they recognized that they could not obtain jurisdiction over me in any court in the United States.

58. In view of all of the foregoing proceedings, I determined it necessary to ask the protection of the Greek courts and secure a final determination of the ownership status of the items donated to me and/or the Foundation by the Plaintiff, so that I may transfer them to the Foundation upon its final formation and carry on my fiduciary duties to the Foundation.

59. In furtherance of that goal, on January 10, 2012 I filed an application before the Magistrate Court of Athens asking the court to place them in escrow under the custody of the Benakis Museum of Greece, pending the Court's determination as to the rightful ownership of the artwork provided to me by Plaintiff and the Foundation's rights. ("Action No. 4"). To that effect, I photographed all and prepared a detailed list of the items in questions, that was presented to the Court and was served upon the plaintiff. A copy of my application together with a record of the proceedings as certified by the Court is appended hereto as Exhibit "A".

60. On January 16, 2012 the Court issued an injunction directing that the artwork remain in the *status quo* until it conducted a hearing which was scheduled for February 16th.

61. It was after the issuance of the injunction and before the return date of the hearing, that Plaintiff filed this action (February 7, 2012). Of course, I was unaware of that this action had been commenced until such time as I was served with the Complaint.

62. On February 16th, Plaintiff appeared by her counsel, Spyros Nikolaou and Georgia Episkopou and objected to the Court's injunction as well as to the adjournment of the case due to an attorney strike in Greece. The Court decline to accept their objections, continued the injunction and adjourned the case for March 1,

63. On the adjourned date, Plaintiff's counsel failed to appear and the matter was adjourned until July 24, 2012.

### MY CONTACTS WITH NEW YORK

64. As set forth above, I am a resident of Greece whose primary source of income is derived from the stock brokerage firm I own and operate in Athens.

65. Neither I or anyone acting on my behalf has ever transacted business in New York which would subject me to the jurisdiction of New York Courts nor have I or anyone acting on my behalf ever contracted to supply goods or services in New York.

66. Neither I nor anyone acting on my behalf regularly solicits business in New York nor do I derive substantial revenue from goods or services used or provided in New York. I do not derive substantial revenue from interstate or international commerce.

67. With respect to the allegations in the Complaint, I did not retain or solicit anyone to act as my agent in this matter. I never visited New York, signed no documents in New York nor hired

    any moving or shipping company in New York or anywhere else for that matter to transport Stamos' works and effects to Greece.

68. To the extent the Complaint alleges otherwise, the allegations are false.

69. Based upon these facts and for the reasons set forth in them Memorandum of Law submitted herewith by my attorneys I respectfully submit that this Court does not have personal jurisdiction over me and as a result the Complaint should be dismissed.

### LAWSUITS PENDING IN GREECE

70. As the Court can see there are four (4) separate lawsuits presently pending in Greece, all of which were commenced prior to the filing of this action.

71. In Action Nos. "1-A", "2" and "3" the issue of my rights under the Agreements between myself and the Plaintiff are at issue.

72. As noted, the Plaintiff has given testimony in Actions "2" and "3" on the subject. The issues to be adjudicated are the same as those in the Complaint she has filed in this Court.

73. In Action "4", the issue before the Court is who is the rightful owner of Stamos' works and effects.

74. Plaintiff has appeared in that action and the artwork is under sequestration.

75. In fact, the issue of ownership may hinge upon whether Greek or U.S. law is applied. Since the copyright assignment does not contain a choice of law provision this is one of the issues which is also presently before the Greek Court.

76. The initiation of the instant lawsuit was clearly an attempt to derail and subvert the already ongoing litigation in Greece.

77. If this action were to continue, there is a likelihood that inconsistent results could be reached in the various Courts.

78. Because all of the issues raised in this lawsuit are already pending in the Greek litigation, this matter should be dismissed.

## NEW YORK IS AN INCONVENIENT FORUM

79. As noted above, I reside in Greece. In addition, all of the artwork which is the subject of this lawsuit is currently under sequestration in Greece.

80. In the absence of a Court Order lifting the sequestration the artwork and effects which are the subject of this lawsuit could not be moved to New York for trial.

81. Even if the Sequestration Order was lifted the cost of moving the artwork is substantial. Moreover, who would bear the cost of the packing and shipping and would the non-paying party have to post a bond to indemnify the paying party if the non-paying party loses.

82. Furthermore, I do not speak English,[1] but Plaintiff speaks fluent Greek. Thus, when she testifies in Greece there is no difficulty in understanding what she is saying.

83. Based upon the foregoing, it is respectfully submitted that, in addition to the reasons set forth above, this matter should be dismissed upon the ground that New York is an inconvenient forum for this lawsuit.

---

[1] This affidavit was prepared for my signature by my attorneys in New York. It has been translated to me in Greek by my attorneys in Greece who are fluent in English.

## CONCLUSION

84. For all the reasons set forth above, I respectfully request that this Court dismiss this lawsuit and grant me such other and further relief as it deems just and proper.

85. I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 25th day
of May 2012

_____
ZACHARIAS G. PORTALAKIS