UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————   X

GEORGIANNA SAVAS,                                        **12 cv 1248 (VM)**
                                                         **ECF CASE**
                          *Plaintiff,*

-against-                                                Declaration of
                                                         Yiannopoulos Panagiotis

**ZACHARIAS GEORGIOU PORTALAKIS,**

                          *Defendant.*

——————————————————————   X


I, Yiannopoulos Panagiotis, declare under penalty of perjury under the laws of

the United States of America, pursuant to 28 U.S.C. § 1746  that the following  is true

and correct:

1.      I am an attorney licensed to practice law in Greece.   My office address Is 2

Salaminos Str. 54626, Thessaloniki.


2.      I am admitted before the Supreme Court of Greece and hold a Doctorate
Degree in Civil Procedure and an LL.M. in Conflict of Laws (both awarded with a
*cum laude* distinction). I teach Civil Procedure on the Faculty of Law of the
University of Thrace as a Senior Lecturer -- and have taught Labour, Commercial and
Private International Law in a variety of Greek academic institutions. I am a member
of the editing committee of the magazines "Revue of Civil Procedure" and
"Chronicles of Private Law."  I serve as a Country Expert for Greece at the Board of
the International Distribution Institute.  I have practiced litigation since 1998 in Greek
law firms: first as an associate and later as a partner.

3.      Accordingly, I am an expert with regard to Greek Civil Procedure.

4.      Under my capacity as a legal academic and a practicing lawyer, I was asked
by Mrs. Georgianna Savas to serve as an expert on Greek Law, providing my opinion
on a number of legal issues, of relevance to the proceedings initiated under docket no.
12 Civ 1248 [Georgianna Savas v. Zacharias Portalakis] before the U.S. District Court
for the Southern District of New York, as filed on February 17, 2012, **[herein: the US
Lawsuit]**.

Declaration of Yiannopoulos Panagiotis
Page 2

5.      More specifically the legal issues I was asked to provide my opinion from a Greek law aspect were the following:

5.1.      What is the object and purpose of the proceedings initiated through the "Request for Interim Relief" filed by Mr. Zacharias Portalakis vs. Mrs. Georgianna Savas before the Magistrate's Court of Athens on January 16, 2012, under docket no. 499/2012?

5.2.      What is the scope and effect of the injunction granted ex parte on January 16, 2012 by the Magistrate's Court Judge in Service "prohibiting any change in the factual and legal status of the paintings described in the petition until the hearings of the petition"? Is the said injunction preventing Mrs. Savas from initiating a principal action abroad?

5.3.      Is the Athens Magistrate's Court competent to address the Request "Request for Interim Relief" filed by Mr. Zacharias Portalakis vs. Mrs. Georgianna Savas dated January 16, 2012?

5.4.      Does the "Request for Interim Relief" filed by Mr. Zacharias Portalakis vs. Mrs. Georgianna Savas qualify as a "principal lawsuit" under Greek Law?

5.5.      When is the time a Greek Court will be deemed as having being seized under the relevant provisions of Greek Law as regards the lawsuit filed by Mr. Portalakis under ref. no. 73962/2882/12.4.2012 against Mrs. Savas before the Multimember Civil Court of 1st Instance of Athens [herein: "the Greek Counterclaim"].

5.6 Discovery, settings and anticipated procedural timeframe available in any Greek action with regard to these matters.

5.7.      Is the right of an artist subject to trasnsfer under Greek Law?

5.8.      Has the FOUNDATION THEODOROS STAMOS been incorporated yet from a Greek Law perspective?

5.9      Is it likely that the provisional relief proceedings pending before the Magistrate Court of Athens will affect the property rights on the disputed objects?

5.10   When Mrs. Savas will be deemed as having "appeared with counsel" at the provisional relief proceedings pending before the Magistrate Court of Athens?

6.      For the sake of good order it is hereby explicitly set that such opinions as are expressed in this present document are established on the dominant or prevailing views in Greek Legal Scholarship writing and jurisprudence. To the extent that some of the relevant topics are subject to more than one view, I relied to those opinions as I deem better established from a doctrinal point of view, citing the existence of the respective debate. My opinion on the said topics reads as follows:

**5.1.      What is the object and purpose of the proceedings initiated through the "Request for Interim Relief" filed by Mr. Zacharias Portalakis vs. Mrs. Georgianna Savas before the Magistrate's Court of Athens on January 16, 2012 under docket no. 499/2012?**

7.      On January 16, 2012, Mr. Portalakis filed a Request for Interim Relief before the Magistrate's Court of Athens. Since I understand that an English translation of said request for the purposes of addressing the question above I deem sufficient to highlight points.  Mr. Portalakis pleads that he is legal owner of all disputed objects

Declaration of Yiannopoulos Panagiotis
Page 3

and paintings on the condition he shall further transfer the ownership to the THEODOROS STAMOS FOUNDATION, as soon as the latter is incorporated; that he is entitled therefore to seek injunctive (provisional relief) under the provisions of Greek Law  because his (conditional) ownership rights are threatened by the risk of Mrs. Savas to establish proceedings before the U.S. Courts in which case he will not be in place to defend himself effectively due to the distance. The relief sought by Mr. Portalakis is that all disputed items are placed under temporary escrow (custody; messegiisi in Greek) of Mr. Aggelos Delivorias, Director of Benaki Museum of Athens, as a provisional measure. Mr. Portalakis asks as well for the issuance of an interim injunction providing for the placing of the disputed objects under the escrow of Mr. Delivorias until the hearings of the Request take place. The latter Request was granted on an ex parte basis on January 16, 2012.

8.      The hearings of the Request were initially scheduled for February 16, 2012, then for March 1 2012, and eventually for July 24, 2012. Under Greek law none of the said (canceled) hearings date qualifies as a date the main proceedings have initiated.

9.      The Request filed by Mr. Portalakis is merely a Request for Interim Relief seeking provisional measures. This is clear from the following elements of the respective judicial document: (a) It is labeled as "Request for the order of Escrow (custody)" a title fit for a Request for provisional measures; a principal action filed before a Greek Court would have to be have been labeled as "Lawsuit" (in Greek: Agogi); (b) the relief sought is the appointment of an interim guardian (in Greek: mesegiouchos) which is a type of relief fit for provisional measure but not for principal proceedings (in the latter case Claimant should seek that he is declared owner of the objects) (c) the relief sought is explicitly confined by Mr. Portalakis in the *ratione temporis* scope of the timeframe until the hearings of "his principal lawsuit" as explicitly set in p. 8 (in fine) of the Request, (d) the "interim guardian" to be appointed under the petition is explicitly described in the "Relief sought" chapter of the Request as "temporary". <u>On the grounds above, the "Request" filed on January 16, 2012 qualifies only as a request for interim relief (provisional measures) and not as "Principal Action".</u>

10.     The Greek Code of Civil Procedure (hereinafter CCP) provides for an extensive system of provisional remedies (measures) in its fifth Book, more specifically in Arts. 682-738 CCP. There are seven expressly mentioned provisional measures: a) judicial security, b) pre-notice of a mortgage, c) conservatory attachment, d) judicial custody (escrow), e) provisional adjudication of a claim (interim payment), f) provisional regulation (settlement) of a situation and g) sealing, unsealing, inventory or public deposit of property.

11.     The granting of provisional remedies in the Greek procedural system is subject to two conditions.  One of these, according to Art. 682 CCP, is the existence of an urgent situation, that has to be temporarily settled or the avoidance of an imminent danger **[Yessiou – Faltsi, Civil Procedure in Hellas, 1995, p. 245 et seq.; Kerameue/Polyzogopoulos, Les measures provisoires en procedure civile Hellenique, in vol. "Justice and Efficiency, The contribution of the Greek Science of Procedural Law to the 8[th] World Conference of Civil Procedure in Utrecht, 1987, IDME, pp 242 et seq.].** The distinction between an urgent situation and the avoidance of an imminent danger is not always logically attainable or necessary, but it

Declaration of Yiannopoulos Panagiotis
Page 4

seems that the Greek courts tend to base the regulatory provisional remedies on the first one, while the second one is being used as a legal prerequisite for granting conservatory measures. Hence, the avoidance of an imminent danger covers in Greece situations as "imminent frustration of enforcement of a judgment on the merits" **[Yessiou – Faltsi, op.cit. p. 246]**. The so called "imminent competition from other creditors" and the struggle for securing priority on the property cannot justify per se the granting of a provisional remedy. The two general prerequisites as already described above should always be met.

12.     In other words, under the Greek Law on provisional relief, one or the other parties is required eventually to file a principal action. As discussed below, that is not a part of or transition from this sort of provisional relief. I have reviewed the files of the Athens courts and found on April 12, 2012, Portalakis did file a principal action, which was served after the Hague Service upon Portalakis. As demonstrated below **[§§ 27-29]** from a Greek Law perspective the Multimember Civil Court of 1st Instance, is not held as having been seized until April 12, 2012.

13.     The preliminary stage of proceedings for provisional remedies includes submission of the relevant application, as a rule in writing (Articles 686, §1; for its necessary elements: 688, §1). The hearing of the case is then , appointed by the competent judge (Article 686, §2). **Ex parte proceedings are allowed, but only under extremely urgent circumstances** (Article 687, §1). Greek courts, cautious of violations of the constitutionally guaranteed right of defense (Article 20 of the Constitution of 1975), make very infrequent use of this discretionary power **[Yessiou-Faltsi, op.cit. p. 248]**. The summoning of the adversary is, under an explicit provision (734.1 GCCP), compulsory in disputes involving possession or detention of property.

14.     Provisional relief may be granted under Greek Law either by a Magistrate's Court, in case the value of the object of the dispute is not exceeding 20.000 € (arts. 14.1 and 683 GCCP) as well as in disputes involving possession offenses (possesio and/or detentio) and trespass of property or by the Civil Tribunal of 1st Instance in all other cases. The Multimember Civil Court of 1st Instance and the Court of Appeal are also entitled to grant provisional relief, under their capacity as Court of the main proceedings.

15.     In this case, Portalakis asserted that the value of 233 of the Art Works (photos of which were attached to the petition without a list or description) had a value of 18,000 €  and thus submitted the application to the Magistrate's court. As described below, this is a falsehood in seeking the jurisdiction of the court.

16.     Mr. Portalakis was seeking interim relief in the form of the placement of a "guardian" and the ordering of an escrow (custody) [arts. 725-727 GCCP], not temporary arrangement of the situation [arts. 731-732 GCCP] the debate is deprived of practical significance in the context of the pending proceedings before the Magistrate Court of Athens.

17.     The form of relief sought in the context of the "Request", i.e. judicial custody is a conservatory measure tending to secure the future enforcement of non-monetary (individual) claims.  No lien or privilege is created in favor of the successful applicant.

Declaration of Yiannopoulos Panagiotis
Page 5

18.    According to art. 695 GCCP, a judgment issued in the context of provisional proceedings is vested with a "temporary" effect  **[SC 891/2011 NOMOS; SC 1197/2011 NOMOS].** In any case it is highlighted that whatever the result of the provisional relief proceedings may be, it is not influencing the principal proceedings **[explicitly so in art. 695 GCCP, see further SC 1792/2009 Hellenic Justice 2010. 722].**

19.    On the grounds above, the Request filed before the Magistrate Court of Athens on January 16, 2012 by Mr. Portalakis qualifies only as an application for interim (provisional relief). By definition the purpose and scope of the said proceedings is the temporary regulation of the status quo and may not result to a final and irrevocable ruling on the true ownership of the disputed objects. The respective findings will not prejudice the principal proceedings.

**5.2.    What is the scope and effect of the injunction granted ex parte on January 16, 2012 by the Magistrate's Court Judge in Service "prohibiting any change in the factual and legal status of the paintings described in the petition until the hearings of the petition"? Is the said injunction preventing Mrs. Savas from initiating a principal action abroad?**

20.    Under art. 691.2 GCCP the Court before which an application/request for provisional measures is authorized to issue an injunction as soon as the application is lodged ordering such urgent measures as may be imposed, for the purpose of ensuring the maintenance of *status quo* until a judgment on the application is issued. Such order is not issued as a separate judgment but is written on the application or the Minutes of the Hearings. The injunctions issued by virtue of art. 691.2 GCCP ("prosorini diatagi" in Greek; temporary orders) are not qualifying as judicial decisions under Greek law, but merely as enforceable instruments **[Opinion of the Attorney General of the Supreme Court 7/2010, EPolD 2011.98].**

21.    On January 16, 2012, the Magistrate in Service issued such a temporary injunction exercising his authority under art. 691.2 GCCP prohibiting any changes of the "legal and factual situation of the disputed objects until the hearings of the Request". This is a quite common type of temporary order in Greek practice which merely prevents the litigant parties either from causing physical damage to the object of the dispute or from any acts of legal disposal of it (p.e. sale, inscription of a mortgage etc).

22.    In the context above the said injunction absolutely does not prevent Mrs. Savas from filing the U.S. Lawsuit; the adverse assumption actually would result to acknowledging "anti suit injunction" status to the said temporary order, while Greek jurisdiction adamantly declares "anti suit injunctions" as contradictory to Greek Public Policy **[CA Piraeus 31/2012 NOMOS; CA Piraeus 110/2004 Dike 2005.831].** ECJ reached a similar conclusion, in the context of the interpretation of Regulation 44/2001, in the well known rulings Allianz SpA και Generali Assicurazioni Generali SpA vs West Tankers Inc (10.2.2009, C-185/07) and Gregory Paul Turner vs Felix Fareed Ismail Grovit, Harada Ltd and  Changepoint SA (27.4.2004, C-159/02).

Declaration of Yiannopoulos Panagiotis
Page 6

23.    Therefore, the temporary order issued on January 16, 2012 by the Magistrate in Service at the Magistrate's Court of Athens, **does not prevent Mrs. Savas from initiating principal proceedings for the determination of her ownership rights before any competent Court.** Even assuming however the adverse conclusion, on a hypothetical basis, then the subsequent filing by Mr. Portalakis of a principal action before the Multimember Civil Court of Athens on April 12, 2012, should be treated as an equal breach of the said order and par consequence (considering that the temporary order of January 16, 2012 was issued at his request and for the protection of his own interests) a de facto waive of whatever protection he had been awarded.

**5.3.    Is the Athens Magistrate's Court competent to address the Request "Request for Interim Relief" filed by Mr. Zacharias Portalakis vs. Mrs. Georgianna Savas  dated January 16, 2012?**

24.    As set above **[see supra  par. 14]** provisional relief in Greece is granted in principle either by the Magistrate's Court for those disputes as they fall within the scope of the monetary limits of its competence (i.e. whenever the value of the dispute is not exceeding 20.000 €) while in the rest cases by the Civil Tribunal of 1st Instance.

25.    Through his petition dated January 16, 2012, Mr. Portalakis relies to establish the competence of the Magistrate's Court to a statement that the value of the disputed goods is 18.000 €.  The statement is prima facie erroneous. It goes without saying based on the extreme value of the objects that the Magistrate's Court will reach the same conclusion then, after the prevailing view, it will discharge the Request, without proceeding to any further examination of the dispute [CT Thessaloniki 30907/2009 CPL 2011.281].

**5.4.    Does the "Request for Interim Relief" filed by Mr. Zacharias Portalakis vs. Mrs. Georgianna Savas qualify as a "principal lawsuit" under Greek Law?**

26.    As already set above the **"Request for Interim Relief"** filed on January 16, 2012, by definition does not qualify and may not qualify as a "principal lawsuit"  and is not considered to be any cognizable civil action before the Greek Courts prior to April 12th, 2012

**5.5    When is the time a Greek Court will be deemed as having being seized under the relevant provisions of Greek Law as regards the lawsuit filed by Mr. Portalakis under ref. no. 73962/2882/12.4.2012 against Mrs. Savas before the Multimember Civil Court of 1st Instance of Athens [herein: "the Greek Counterclaim"].**

27.    In Greek law, the procedural effect of the initiation of a proceeding commences retrospectively, from the time an action has been filed, provided that this action has been subsequently served on the defendant. Otherwise, the composite act of the commencement of a civil proceeding is considered as not having been brought to completion. In conclusion, a Greek court is seized of a civil action from the date the

relevant complaint has been filed with the clerk of the court, <u>once the action has been subsequently served on the defendant</u>. By application of the said principles, the Multimember Civil Court of 1st Instance will be deemed seized on the dispute iterated through the lawsuit filed under ref. no. **73962/2882/12.4.2012,** on April 12, 2012.

28.    As noted, Portalakis did file a principal civil action with the Greek court on April 12, 2012, which was after service of the summons and complaint in the instant action upon Portalakis. Assuming that the provisions of Greek Law were applicable for the purposes of determining a "who was first seized test" as between the U.S. and Greek lawsuits, the New York civil action was seized first.  Indeed, if one applies Greek law, the New York civil action was the "prior filed" action on the date of its filing, February 17, 2012.

29.    Since the preceding Request for provisional relief lodged on 16.1.2012  does not qualify as a "principal action" under Greek Law, its own lis pendens effect is strictly restricted to the determination of the conditions for the granting of interim relief **[Kerameus/Kondlylis/Nikas (-Kranis), GCCP Commentary II, 2000, art. 686 rn. 6; Nikas, Lis pendens objection, 1991, π. 103-104; MultCivCourt Athens 13407/1984 Hellenic Justice 1985.305; the opinion that a Request for interim relief is not producing any lis pendens effect at all is also advocated in jurisprudence: CT Thessaloniki 4595/1986 Harmenopoulos 1986.1087]** and is not expanded by definition to the principal dispute.  The earlier provisional application of January 16, 2012, in another Court does not transition into the principal action aiming to the determination of the debated ownership rights of Mrs. Savas.

**5.6 Discovery, settings and anticipated procedural timeframe available in any Greek action with regard to these matters,**

30.    Greek Law does not provide for an equivalent of "discovery" as known in U.S. Law.   A litigant party engaged at civil litigation is merely entitled to ask for the production of documents and solely upon the condition that he is in place a provide a full and adequate identification of the document whose production is sought alongside a description of the document's content **[dominant view; SC 963/2011 NOMOS; Multimember Civil Court of 1st Instance of Athens 5144/2009 CPL 2011.460].**  In principle such a request must be filed either as an incidental action before the Court of the main proceedings, or before a Civil Tribunal of 1st Instance in the form of a request for provisional relief. In the first case the Court of the main hearings issues an interim decision ordering the person who holds the documents to produce them; then the main proceedings are reinstituted through the appointment of a new hearings date. This course may result (given the existing circumstances in Greece) to delays exceeding two years, since the litigant party is obliged to again follow the procedure for the fixing of new hearings. Theoretically art. 254.3 GCCP provides that in similar occasions the hearings date should be fixed as close as possible to the mandatory nofication period of 30 days; however **due to the overloaded dockets of Greek Courts, especially in the major cities of Athens and Thessaloniki, the said provision is simply not applied in practice.** On the other hand the option to seek production of documents in the form of a petition for provisional relief often lacks effectiveness as well, since in many occasions Greek Courts dismiss the requests either on the basis that the relief sought qualifies as a (prohibited) full satisfaction of the right to be secured **[CT Athens 34846/1998 NOMOS]**, or that there is no

Declaration of Yiannopoulos Panagiotis
Page 8

imminent danger [CA Thessaloniki 4926/2003 Harmenopoulos 2004. 1315; CT Athens 3338/2001 Labor Law Review 2003.35;  CT Athens 8604/2004 NOMOS]. In any case many such requests (at least on the basis of the available published relevant decisions to the legal magazines) are dismissed as inadmissible on the ground that they fail to describe the document requested in detail [SC 963/2011 NOMOS; CA Athens 673/2009 Hellenic Justice 2009.1474; CT Athens 8430/2009 NOMOS (partially);  CT Athens 1565/2008 Hellenic Justice 2008.939; CT Athens 1515/2005 CLR 2005.571]. So even the production option is not a realistic option from a practical perspective.

31. There is no mechanism for the purpose of compelling U.S. witnesses to come to Greece for trial.  Moreover, there is no way to compel depositions of those witnesses. Thus, the depositions of Soho Crates, U.S. auction houses not having branches in Greece, Ms. Gikos and Mr. Giannkos could not be compelled.

32. Assuming that US Law is eventually considered applicable by the Greek Court to the merits of the dispute, then the mechanism for the determination of the context of any foreign lex causae are not often effective, but result to further delays. Art. 337 GCCP provides of course explicitly that the litigant parties are entitled to file before the judge any available means to demonstrate their points established to a foreign law (p.e. legal opinions of academics, abstracts of legal treatises, abstracts of the applicable foreign law provisions). However, in the case the Court is not convinced on the context and proper interpretation of the applicable foreign provisions then it will order the production from the Institute of Foreign Law, a public law institution based in Athens. From my experience the preparation of such a legal opinion usually requires 4-6 months, depending on the extent of the query ordered by the Court, while as soon as the Opinion is provided then the litigant parties must reinitiate the proceedings, fixing a new hearings date (which on the basis of existing condition may require up to two years) thus suffering a further delay.

33.     Unfortunately, the procedural timeframe of Civil Proceedings in Greece is usually subject to substantial delays due to the extensive overload of dockets. Despite the efforts set by the legislature in the past two years by virtue of Laws 3994/2011 and 4055/2012 to expedite civil proceedings no substantial benefits have been demonstrated so far. From my experience an average to obtain a hearings date at the Courts of Athens is about 2 years. Normally the Court is asked to address about 20-25 cases on that one hearings date, examining witnesses for all of them. L. 4055/2012 iterated an option for Court to define separate hearing dates for the examination of witnesses. However the respective provision came to force only on 12.5.2012, so there are not substantial indications on how will it be applied so far in practice. In practice you are entitled to only one witness per litigant side to be examined and counter examined before the Court plus an extra of another three affidavits. As one may easily assume **the timeframe to conduct witness examination and counterexamination is usually extremely pressing and the total time dedicated to each case of the docket, rarely exceeds 1 hour** (for examination and counterexamination of both parties witnesses, opening statements and clarifications on the legal and factual topics involved), even in complex commercial disputes.

34.     The hearings date obtained by Mr. Portalakis for the Greek Counterclaim, for December 19, 2012, is a quite short one for the current conditions. I assume that Mr.

Declaration of Yiannopoulos Panagiotis
Page 9

Portalakis achieved this by filing a request for the fixing of a preferential date of hearings before the Administration of the Athens Court of 1st Instance. However postponements of the case either due to the litigant parties' relevant requests or due to unpredictable conditions (p.e. strikes of public servants, elections, mandatory strikes of the Greek Bars) are fairly often I am afraid in Greek practice, resulting in each occasion to the fixing of a new hearings date after 1 to 1 ½ years. It being scheduled in the holiday season makes such delays even more likely.  In general the length of Greek Judicial Proceedings is often criticized as demonstrated by numerous convictions of the Greek State by the European Court of Human Rights [: ECHR] for breach of the right to a fair trial in the form of failing to provide the necessary conditions to ensure a reasonable scheduling and length of proceedings. On an indicative basis as far as civil proceedings are concerned one may quote ECHR judgment of April 2, 2000 (ACADEMY TRADING LTD AND OTHERS v. GREECE), HUDOC Database, condemning Greece for breach of the right to right to a fair hearing within a reasonable time in a case where civil proceedings against Citibank lasted for 13 years (1982-1995) including appellate and cassation proceedings. In the said case, the proceedings before the Multimember Civil Court of 1st Instance lasted almost five years. Similar rulings have been issued in more recent years in ECHR's judgments KAKAMOUKAS AND OTHERS v. GREECE (15.2.2008), HUDOC (length of administrative justice proceedings); ARVANITAKI-ROBOTI AND OTHERS v. GREECE (18.5.2006), HUDOC (length of administrative justice proceedings); GEORGIOS PAPAGEORGIOU v. GREECE (9.8.2003), HUDOC (length of penal justice proceedings).

35.     With regard to the attempt to consolidate the proceedings of the interpleaders filed against Mrs. Savas with Defendant's Greek cases, the Court dismissed the request and proceeded with the hearings of the two principal lawsuits against Mr. Portalakis.

### 5.7 Is the right of an artist subject to transfer under Greek Law?

36.     Greek law is not regulating explicitly rights of "authentication" (p.e. in the sense similar to  17 USC  106 A, the Visual Artists Rights Act of 1990); under L. 2121/1993, i.e. the Greek Law on Intellectual Property rights, it is advocated in scholarship writing that the said right falls within the scope of the "moral rights" of the artist regulated by art. 12.1 of the said Law. Transfer or assignment of Moral rights of the artist is explicitly prohibited by virtue of art. 12.2  of L. 2121/1993; by virtue of the same provision Moral Rights may be inherited but even in the later case the heirs of the artist are obliged to exercise those rights in compliance with the wishes of the artist (assuming that such wishes have been expressed). In the said context no transfer of authentication rights may be deemed concluded from a Greek Law perspective to Mr. Portalakis. In prior litigation proceedings against third litigant parties Mr. Portalakis has invoked art. 16 of L. 2121/1993 as a legal ground to justify the alleged transfer. However the said provision is merely regulating the expression of the artist's consent to acts which would otherwise qualify as infringements of the moral rights of the artist. After my opinion, the provision is prima facie not applicable to the alleged transfer of a right to authenticate works of Stamos, since the right to "authenticate" existing works is not involving consent to acts and omissions which would otherwise qualify as infringements of moral rights of the artist, not to mention

Declaration of Yiannopoulos Panagiotis
Page 10

that the said provision refers exclusively to the person of the artist, leaving no hints on the possibility of the exercise of the right by third persons.

**5.8.   Has the FOUNDATION THEODOROS STAMOS been incorporated yet from a Greek Law perspective?**

37.     Under Greek Law (arts. 110, 112 GCC), the incorporation of a Foundation is subject (inter alios) to the issuance of Presidential Decree authorizing the incorporation of the Foundation. To the best of my knowledge, in May, 2011, the competent division of the Greek Ministry of Finance declined to approve the Foundation as being underfunded — and to my best knowledge has not reconsidered the application since then.

**5.9. Is it likely that the provisional relief proceedings pending before the Magistrate Court of Athens will affect the property rights on the disputed objects?**

38.     As set above the purpose of the pending provisional relief proceedings before the Magistrate Court of Athens is to regulate the status quo of the disputed objects until the issuance of a judgment to the merits of the dispute, while be definition any judgment issued in the context of the said proceedings will not prejudice by any means the outcome of the main proceedings.

**5.10  When Mrs. Savas will be deemed as having "appeared with counsel" at the provisional relief proceedings pending before the Magistrate Court of Athens?**

39.     Under Greek law, a person is not deemed to have "appeared with counsel" unless the hearings of the case "initiate". Art 242 GCCP provides for that the hearings are initiated, on the scheduled date when the judge reads the names of the litigant parties with the later ones declaring their appearance and representation by Counsel. Oral statements on facts and legal arguments follow as well as examination and counterexamination of witnesses. As regards the provisional relief proceedings pending before the Magistrate Court of Athens, the hearings of the petition were initially fixed for February 16, 2012, then for March 1, 2012 and eventually for July 24, 2012. Since on the said dates, no hearing took place from a Greek Law perspective, the oral hearings of the dispute will not take place but on July 24, 2012. Assuming that Mrs. Savas opts to participate at the said proceedings then she will be deemed as having "appeared with counsel" on July 24, 2012. In the adverse case, the hearings will take place ex parte, while whatever judgment will be eventually issed subsequently will no prejudice the main proceedings nor will award ownership rights.

I declare under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746  that the foregoing is true and correct:

**Executed on:**  June 8, 2012

Declaration of Yiannopoulos Panagiotis
Page 11

_____

DECLARANT
YIANNOPOULOS PANAGIOTIS